May I proceed? Thank you, Your Honor. Good morning. My name is Lori Tyker. I'm appearing on behalf of the appellant, Mr. Mark Pray. I will attempt to reserve about three or four minutes for rebuttal. This is a habeas case and a case with extraordinarily strange facts regarding double mistaken identity, unlike anything I personally have ever seen. The claim before you is that Mr. Pray received ineffective assistance of counsel when trial counsel informed the jury that Mr. Pray would testify, staked critical portions of the defense's argument on Mr. Pray's testimony, and then failed to call him at trial. The entire issue at trial here was self-defense and that Mr. Pray did not have the requisite intent for murder. During voir dire in the case, defense counsel promised twice that Mr. Pray would testify. He said, Mr. Pray will be testifying in this case. I believe that Mr. Pray will testify. I can assure you of that. In opening, the ultimate issue was whether or not the prosecution was going to be able to prove beyond a reasonable doubt that he did not act in self-defense. That's what defense counsel noted in opening the ultimate issue of this case would be. And then went on, not one, not two, not three, not four, not five, not six, well, about six times of saying, but Mark's story, his slant is going to be, we submit that he will testify, Mark will say, and he will testify, and he will tell you in no uncertain terms what Mark will say will have the ring of truth. Well, the deficient performance here was that trial counsel decided at trial counsel's discretion, you know, before he was, before Mr. Pray was to take the stand, that the state hadn't proven their case and there was no reason for him to do that. And he explained that to the jury, right? He did. Okay. So you know what the problem is with Strickland. It's a strategic choice. So how do you get over the, that, that restriction? I don't believe it was, what, what circuit courts have said, in addition to, Your Honor, in the recent case of Mann v. Ryan, is that there can be ineffective assistance of counsel when counsel broke the promise that he would testify and that there was a specific promise made to the jury that he would be testifying, and it was not strategic in that regard for him to do so. Each case that Your Honor looked at, as, and, and ultimately it was not found in Mann for counsel to have made a specific promise, whereas here we clearly have specific promises over and over and over again. But, but when defense counsel makes an about face by declining to present the promised evidence in absence of unforeseen circumstances, and there weren't any unforeseen circumstances that came about at trial, it would not have justified this change in strategy. And therefore, it is deficient performance under Strickland. But counsel, in this case, when a defendant, the defendant holds the right to testify in a criminal trial, even over the objection of the defense counsel, the defendant always has the right to testify. How do we know that didn't happen here? Meaning, how do we know it wasn't Prey's lawyer fully anticipating that Mr. Prey was going to testify, and then Mr. Prey got cold feet? Mr. Prey submitted an affidavit in his, well, counsel submitted an affidavit on his behalf within the supplemental points of authorities in his post-conviction petition in state court where he stated that, well, a declaration, because he was in prison and was not able to have it notarized, but his declaration submitted under penalty of perjury was that based upon the advice of counsel, he did not test, he did not testify because counsel told him he didn't have to, that they hadn't proven the case. But again, that is a post-verdict declaration. Yes. Okay. My other question is that if we were to agree with your view in this case, and here's one of the things that concerns me with your position. I mean, it was a bungled move by the defense attorney. I have no doubt about that. You know, I've always said, you better cash the check, you know, you better be able to cash that check, and he didn't do that here. But wouldn't we be creating effectively a rule that any time a lawyer says, my client's going to testify, and the client, in fact, doesn't testify, you get a do-over? No, I don't think so, because, you know, if you take a look at the limited cases where this issue has been raised in terms of the ineffective assistance, the deficient performance, I mean, I just can't, I can't see that a lawyer's going to go into that with that strategy saying, well, here's my move that I'm going to set up. But let's say you have a loser case. Let's say you have a dead-bang loser case. You have to prove prejudice. And so let's talk, maybe we should talk about that. So how would the trial have been different? I know it's hard to map this whole thing out, but there was a lot of impeachment on this guy. His story was kind of a wild story. Can you explain to us how it would have been different? Well, and that's the point. There was a lot of, exactly what you said, there was a lot of impeachment on this guy, and the impeachment on this guy was the impeachment on the defendant. The defendant that over and over and over and over, defense counsel had said, you're going to hear his story. You're going to hear his story. Defense counsel knew ahead of time that there were different statements. They knew there had been a prelim. There had been a lot of the witnesses that testified at the prelim testified at trial. There were witness statements. He knew exactly what was going to happen at trial. He put his case, he banked his case on Mr. Prang explaining, because he was the only one there. Remember, Marjorie, his ex-wife slash girlfriend, was in the car with him. She wasn't available to testify at trial. And so her testimony, which contradicted Mr. Prang's, was read in by a district court clerk far different from had she actually been sitting there and the jury would have been able to evaluate her demeanor. It was read into the record. The detectives were presenting Mr. Prang's statements. He was subject to cross-examination, but what you had all the way through, which is very close to the facts in the Ubler case in the First Circuit, what you had all the way through here was the state presenting their case that Mr. Prang had acted with premeditation and deliberation. What didn't happen, and then in terms of the defense case that defense counsel chose to set up, that he put on witnesses showing Mr. Prang's veracity. Well, that's great, but he didn't call him. He didn't put him on the stand for the jury to be able to evaluate that veracity. All they got was the examination by the state regarding his statements through the detectives. You had Marjorie's testimony, who was at the crime as it unfolded, read in by the clerk's record, by the court's record, and the jury heard nothing, absolutely nothing from Mark's mouth and from his ability to convey to the jury that it was reasonable under these bizarre circumstances to have acted as he did in self-defense. But why can't counsel make a strategic choice at the end of trial saying, look, I got, we have your theory out there in my opening statement. We have the facts in essentially through some third parties. Let's not, I like where we are. Let's not risk anything by putting you on the stand. I mean, that's a strategic choice if that's what happened here, and that's not subject to Strickland reversal. It's deficient performance, Your Honor. And I believe that the case out there does show that, shows that you can't, you, it's deficient. Well, I agree with you. I mean, in a general sense, and you've read Mann, I think it is deficient performance. On the other hand, if it's a strategic choice, it's immunized from Strickland relief. Well, you can look at it, you parse the issue a little bit differently in terms of whether or not it's a strategic choice to not call the defendant versus its ineffective assistance of counsel. And that's the issue that is before this Court right now, which is somewhat different. It's ineffective assistance of counsel to promise that your defendant, your client is going to testify over and over and over again, and then fail to put him on the stand. And I believe that that's the distinction that the cases in the First and Seventh Circuit, and that even Your Honor said in Mann, would give rise to deficient performance and ineffective assistance of counsel. Here the problem I see it is that not only does counsel make the promise that he's going to testify, your client is examined by the court and understands he has a right to testify, and then your client apparently agrees he's not going to testify, even though he's heard the same opening statement that everybody else has heard. He's had a chance to evaluate the case the same way his lawyer has. But he gets to make the ultimate decision whether to testify or not, right? And you're not contending he was prevented from testifying, correct? No. By his lawyer? No. He was advised not to. He was advised not to. Right. Exactly, Your Honor, Judge Collins. He was advised of his right not to testify, but again, the claim is that counsel was ineffective for not having him testify when over and over and over again he promised during opening, and that was deficient performance on his part that prejudicially impacted his case such that the jury was unable to find that his actions were reasonable and that he acted in self-defense during the highway chase that resulted in the shooting. You got to the prejudice problem that you have to also satisfy. Yes. Your client's story was in the record, probably better told than he. I would disagree, Your Honor. I would disagree in that, again, what the jury needed to find was that his actions were unreasonable. His client's story, Mr. Prey's story was put into the record, again, through the state's witnesses. It was put in through detectives that were presenting what he had said to them and which Mr. Prey contradicted in his declaration in terms of specific facts that he had told the officers in terms of whether or not there was a gun and there was some confusion over that as to whether or not he said he saw a gun versus he didn't see a gun versus he saw a finger. All of those things, that along with his fear of Bud Baker prior to this incident, all of that was done exactly as should unfold in a trial in terms of the state presents the evidence. There was some cross-examination, but ultimately what the jury didn't hear was the ultimate decision, the ultimate person who was there and who had those feelings of whether or not it was reasonable, Mr. Prey, and what happened. And he could have testified and cleared up these contradictions that were brought out through direct examination by the state, through their witnesses, versus the cross-examination that his counsel was able to put forth. And I... You're down to a little under four minutes due on reserve. Thank you. Thank you, counsel. Good morning, Your Honors.         I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. I'm a lawyer. And I'm here representing Nevada Respondent Appellants in this case. And what I'd like to do this morning, I think there's sort of the root or the crux of this case, but there's a few issues that I think actually Your Honors have already addressed a little bit. I'd like to kind of address those first off, try to get them off the table, and then kind of hit the root of this case. And so that's how I plan to proceed. The first thing, and I think this kind of was touched on a little bit, and we saw it in the opposing counsel's presentation, that is, I think it needs to be clear that there is not and cannot be a per se rule that if what happened in this case happens at trial, then it's a violation of the Sixth Amendment under Strickland for a couple reasons. If that was the case, well, first of all, looking at Chief Judge Thomas's man decision, you say in the man decision, Your Honor, you say counsel may render constitutionally ineffective assistance. I think that, and I think part of the question, I think defendants counsel even acknowledged that. And Judge Owens, I think you hit right on the nub of the problem with having the per se rule, and that is, if there's a per se rule, then you'll always just say, my defendant's, my client's going to testify, and then the client won't testify, and then you roll the I get it overturned in habeas proceedings. And so there can't be a per se rule, and the reason I bring that up is because in the briefing, and I think here again this morning, there's a little bit of a disparity in that there is some treatment by prey that there is a per se rule, and I think so we need to kind of get that off the table. I think it also kind of disposes of the first prong under the EPA analysis of whether or not the Nevada Supreme Court's decision in this case was directly, quote, contrary to clearly established Federal law. I think there would have to be something like a per se rule for that to be the case. So then what's left? If there's no per se rule, what's left is the other part of EPA's deferential standard, which is whether or not this was, the Nevada Supreme Court's decision was an unreasonable application of a clear aspect of Strickland or the factual counterpart to that, an unreasonable evaluation of the facts. And I do want to, I know the Court knows this, but I would be remiss if I didn't remind the Court that, of course, under EPA and Harrington and Johnson, that here it's prey's burden not just to demonstrate that the Nevada courts got it wrong, but that no fair-minded jurist, reasonable jurist, could reach the conclusion that the Nevada courts did. I do want to also deal with one other thing that didn't really come up in argument this morning, but is in Prey's reply brief. And Prey says in his reply brief that this Court's review is de novo, so I think tries to avoid the epidefference by characterizing, by saying that the Nevada Supreme, and here I'm quoting from the reply brief, the Nevada Supreme Court ruled only on the issue of whether trial counsel was ineffective for failing to call Prey as a witness, as opposed to being going to call Prey and then didn't call Prey. And that did come up a little bit this morning, but it's just not true that that was not dealt with by the Nevada Supreme Court. In the excerpts of Record 68, the Nevada Supreme Court did explicitly rule that although trial counsel, and here I'm quoting, although trial counsel did state that Prey would testify during opening statements, the Court goes on to say he was not ineffective for failing to call Prey as a witness. So I do think that EPA's double-deference standard applies with full effect here. I think that's important. So as I think Your Honors have already sort of indicated this morning, what I — what we have here is the counsel saying, and I think reasonably thinking at the beginning in his opening statements, that as Prey's counsel said here, this is all about self-defense. His whole theory was self-defense. He didn't say I didn't shoot the guy. It's all self-defense. He was — Prey's counsel was reasonable in thinking at the opening statement that none of this was going to come in unless Prey testified. But then if you look at the record, if you look at during the course of trial, and this is what the Nevada trial judge who heard this case on post-conviction proceedings concluded. He says in excerpts of Record 1569, he says, the judge concluded, the defendant made a three statements of the defendant were admitted into evidence during trial, and this is based on a colloquy that happened during the post-conviction proceedings where the prosecutor explains that the prosecution in this case made a sort of uncharacteristic, I guess what you call strategic gamble to allow in statements that would allow Prey to get in these statements without having to take the stand. So this is not a case like the case he's relied on by Prey in his briefing where you have a defendant's counsel making a statement and then saying he's going to testify, and then you have no reason, no conceivable explanation of why counsel changed his mind. Quite the opposite here. You have this unexpected thing that happened where the prosecution let in these statements, and so that's why Prey's counsel changed his mind. And in fact, you can see that if you read, I think Chief Judge Thomas referred to, there's three pages in the trial transcript during Prey's counsel's closing statements where he had asked the judge to give the instruction to the jury saying, don't draw a negative inference from Prey not testifying. He refers to that, and then he says, now, you know, it wasn't until yesterday that I wasn't going to have, I'm paraphrasing, of course, but it wasn't until yesterday that I thought that the defendant wasn't going to testify, but we're ahead, and much is made about it. Well, why did he think he was ahead? I mean, this is a self-defense case. That's the only thing. He thought he was ahead because he thought that the statements that had come in had shifted the burden to the, under Nevada state law, it shifted the burden to the prosecution. They had not met their burden. That's why he thought he was ahead. He was so wrong. Well, he was. He was. Well, two things, Your Honor. First of all, hindsight's always 20-20, but secondly, it cannot be that whether or not a counsel was ineffective or not turns. I mean, first of all, this was a tough case from the very beginning. The guy, you know, pulled out a gun and shot six times at, you know, at a vehicle that was chasing him, and there was inconsistent statements in the record. I mean, you can't, it wasn't like he had a great case to begin with. And it was reasonable, I think, for him to think that his only chance, maybe it was a long shot, but his only chance at the beginning was that he was going to, that somehow he would put Prey on the stand and Prey would somehow dazzle the jury and, you know, this is kind of the theory that's in it right now. No, but he gets up there, he says, my client's going to testify, you're going to believe him, and then he doesn't testify, and he said, I decided we were so far ahead jury, you know. I mean, that's not exactly the best argument, you know. No, he's got to try to convince the jury with something, Your Honor, I think. I think he's got to try, he's got to work with what he's got, you know, I think, and that doesn't change the standard for, so I think ultimately, ultimately what we have here is not a case like those other cases, like the cases that are cited by Prey in his brief. It's a case where, as Your Honor said, he made a strategic decision. He didn't expect this, you know, hindsight is 20-20, maybe, you know, he could say in this case, Judge Owen said maybe he should have not said anything during the opening statement, but it's pretty clear from the record, I think, that he thought, and reasonably so at the opening statement, that the only way Prey was going to be able to get his self-defense theory in front of the jury was if he testified himself. That turned out not to be necessary because of decisions made by the prosecution. He made a strategic decision in light of that change. He did his best that he could under the circumstances to try to, you know, spend three pages of the trial transcript trying to make sure that the jury didn't hold him not testifying against him. I think this is not the same kind of case, Your Honor. And the last thing I think we need to keep in mind, and this goes to the prejudice. This is an interesting case because both prongs of Strickland kind of converge a little bit in this case, because prejudice, I think, was an issue both for the first prong of Strickland and also, obviously, the second, and that is if he the — it's pretty clear, I think, if you look at the record, that the reason he decided to ultimately not have Prey testify is because he was concerned about prejudice. He was concerned that when Prey took the stand, he was going to get mercilessly cross-examined and his credibility was going to be destroyed. Now, at the beginning of the trial, when he didn't think that this stuff was going to come in, he thought he was going to have to take that gamble. He thought he was going to have to take that gamble or Prey didn't have a chance of — but later on, he — once it was already in, he thought, okay, there's no need to take that gamble. Here's what would have come in. This is important, because if you read Prey's briefing, it makes it sound like if Prey had gotten up there, you know, and if he gets a new trial, he'll get up there and he'll — they'll be able to hear from the horse's mouth and everything will be great. What they don't, obviously, acknowledge is that, you know, the prosecution is going to highlight that Prey gave inconsistent statements and that sometimes he said that he saw a gun, but other times he said he didn't see a gun. And they're also going to ask him how much crack cocaine he'd done earlier that day. They're going to ask him about hitting Marjorie. All this stuff is going to come out if he took the stand. So it is because of that concern about prejudice that I think Prey's defense counsel, who clearly made a strategic decision here — it's clear, you don't spend three pages of the closing statement talking about it to the jury if you didn't make a strategic decision — he made that strategic decision because he was concerned about prejudice. So I think it would be difficult for us to think that there would be prejudice if Prey's own trial counsel at the time thought that there was a high probability — let me put this — I think it's difficult for us to arrive at a conclusion that there would be prejudice from him, that he was prejudiced by not testifying when Prey's own counsel thought he was going to be prejudiced. But, counsel, there must be some tactical decisions that can be ineffective. I mean, to make a gross analogy here, you know, to throw the ball on the one-yard line in the Super Bowl and you have Marshawn Lynch in the backfield was, I think, pretty — I say it as a 49ers fan, but it was pretty stupid. So clearly, even though a decision was made under Strickland, there must be some decisions, even though they are strategic or tactical, that are so foolish that relief could be granted. Let me back up on this. That's why I mentioned the fact that there can't be a per se rule here. If there is not a per se rule, and there just can't be a per se rule, that when you say somebody, your client is going to testify and then he doesn't, that's per se ineffective. If there's not a per se rule, then what kind of things would not be ineffective? Well, one is when things change at the trial, I think, and this is clearly a case, and this is where I disagree with, I think, Prey's counsel's statement here. Things did change at trial. The record is very clear that things changed at trial. The trial judge concluded that. So under Harrington, under EPA's double deference, unless the trial judge was completely unreasonable in concluding that the reason that he did this was because things came, because it happened unexpected, a way that he didn't expect it to happen at trial. So sure, Your Honor, I'm sure that there are circumstances, there are decisions that what you might, you know, I put quotes around a call strategic that would be so ineffective. I just don't think that unless we're going to have a per se rule and we can't have a per se rule, then this is fair. No, but it can't go the other way either. I mean, in the sense of you can't label something strategic which is an undefendable choice. You're saying? In other words, you can't say, well, obviously it was a strategic choice and that immunizes that decision from Strickland analysis just by labeling it strategic. It has to be an actual strategic choice. Right, Your Honor. That's why I've gone to the trouble this morning to go through the, you know, explain in the record and I can give you more record sites if it helps, but explain how I think that, you know, if you look at what the trial judge, when I say trial judge, the post conviction Nevada State Court trial judge and the prosecutor and then you look at the closing statements of Prey's counsel, they all fit together to show that what happened here was he thought Prey was going to have to, and reasonably so. I think at the beginning he didn't think that the prosecution was going to do what they did, which was make these strategic decisions that allowed in Prey's earlier statements. And then once that happened, then he decided to do what many, him and the criminal defendant decided to do, what many of them do and decide is I don't need to testify, I'm not going to testify. Is that the best choice? That's not, I mean, that's not the standard that we apply here. Is that the best choice? Did he, you know, did he, did he get the best possible representation, the question here is could any reasonable jurist conclude that it was a reasonable and that there was no prejudice from the decision? I think that that's a pretty clear answer, yes, Your Honor, so, Your Honors, I have no further questions. Thank you, counsel. Thank you, Your Honor. We'll hear rebuttal. I knew when I was rereading the closing argument that this case was going to be all about football. It's what habeas, you know, habeas were, armchair quarterbacks, it all comes down to football. I'm not saying that there should be a per se rule, I'm not saying that, but what you said, Judge Owens, is correct. Some decisions are so foolish that it has to be ineffective, and that's what case law has shown in the cases that we've cited and talked about from the Seventh and First Circuits and what this Court and Your Honor said in Mann that there are these cases that happen. There are these cases that happen that are out there, and if you look at the facts of those cases, Oobler, Harris, Anderson, Hampton, especially Oobler, a trial counsel can't gamble on perceptions of what the weaknesses of the prosecution's cases are, and that's what happened here. And I disagree with what the Attorney General has stated in terms of trial counsel thought ahead and determined that he didn't need to testify, and that was because he was going to mercilessly be cross-examined. I disagree with that. If you take a close look at the argument, again, we didn't have an evidentiary hearing here in post-conviction. All we have is argument that was made to the trial court judge. That was actually a different judge that didn't hear the trial. The trial court judge did hear a motion for a new trial, and that's where counsel talked about what happened, and that's not what he said in the motion for a new trial. He said that he made the wrong call, that, you know, he shouldn't have thrown it at the one-yard line, and he made the wrong call, and it wasn't that he was afraid of Mr. Prey being cross-examined. And that goes, that you can see that from the promises made in the opening. He knew that there were different statements. He'd gone through, he'd gone through the prelim. He knew that Mr. Prey had made different statements. He knew that Marjorie contradicted some of the things that Mr. Prey said. He knew all of that going in. There was nothing that happened and unfolded throughout the trial that would have made, that he didn't know about ahead of time. And so basically what this was, this was deficient performance. In terms of ADPA deference, yes, we do need to look at ADPA deference for that prong of Strickland. I disagree that they collapse here. I believe that under Wiggins and Ronpilla and Porter v. McCollum, you do have de novo review on the prejudice prong. The Nevada Supreme Court only talked about the deficient performance prong. And so I do believe that you have de novo review on that. Have a question. Sure. Your opponent seems to indicate that without the government being nice, Mr. Prey's statements wouldn't have come in at all unless he testified. Because there was self-serving hearsay, I guess, is what he's trying to indicate. If the government doesn't make the decision to play Mr. Prey's statements and tell them what Mr. Prey said, there's nothing about what Mr. Prey had to say comes in their case to achieve. Are you agreeing with that? No. No. Mr. Prey's statements were going to come in, and I don't think that they were self-serving. Certainly they were. That's usually the objection that you hear is self-serving. I'm sorry? That's usually the objection that you hear at the trial court level. Right. I mean, I don't think that there were. The reason that they were presented by the state was to show all the discrepancies and differences between what he had said and what, during the different times that he'd been spoken to by different officers, as well as the differences within those statements from Marjorie whose testimony was read in. And again, it all went to the premeditation and deliberation in the first-degree murder. A bad instruction, I will say. Set that aside. It was a bad Nevada instruction that was given, which is also important in the case, but it's not at issue in terms of the IAC claim that's before you. Any further questions? Thank you, counsel. Thank you both for coming here and arguing today. The case just heard will be submitted for decision and will be in recess.
judges: Thomas, Owens, Collins